IN THE MATTER OF THE PETITION OF WILLIAM T. VAN TASSELL, A TAXPAYER OF THE TOWN OF ROSENDALE, RESPONDENT, *v.* JOHN DERRENBACHER, AS COUNTY TREASURER OF ULSTER COUNTY, APPELLANT.

*Town bonds issued in aid of a railroad — application of the tax collected from the railroad company in extinguishment of renewals of such bonds — change of ownership of railroad — special act providing for the payment of the bonds — effect of, upon the general act.*

The provisions of section 4 of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871, to the effect that all taxes, except school and road taxes, collected for the next thirty years in any town, village or city, on the assessed valuation of any railroad for which said town, village or city, has issued bonds to aid in its construction, shall be applied to the redemption of such bonds, are applicable to bonds which have been issued for the purpose of providing the means to refund the original bonds issued for the construction of a railroad, where such original bonds have fallen due.

The fact that the original railroad company having defaulted upon its mortgage, its property was sold under a foreclosure thereof, and became the property of a new corporation, has no effect upon the manner in which the proceeds of taxes upon such property are to be applied.

The fact that a special act has been passed relating to a particular town, which requires a sinking fund to be provided by taxation for the payment of such bonds sufficient to provide therefor at their maturity, does not supersede the provisions of the general act in regard to their payment; but the general and special acts being consistent with each other, the creditor holding the bonds is given two different securities for their payment.

*Quære,* whether the legislature could, without impairing the obligation of the contract, deprive the holder of the bonds of any security he already held, unless a new security were given and accepted upon condition of a release of the old one.

APPEAL by John Derrenbacher, as county treasurer of Ulster county, from an order, entered in the office of the clerk of the county of Ulster on the 19th day of November, 1889, ordering said county treasurer to execute and comply with the provisions of section 4 of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871, in that the moneys paid to him arising from taxes (except school and road taxes) levied and collected on the assessed valuation of the Wallkill Valley Railroad, in the town of Rosendale, for the year 1887, be used in the pur-

chase of the bonds of said town of Rosendale, issued to aid in the construction of said Wallkill Valley Railroad, when the same can be purchased at or below par; or in case said bonds cannot be purchased at or below the par value thereof, he invest the said moneys, with the accumulated interest thereon, in bonds of this State, or of any city, town or village thereof, issued pursuant to the laws of this State, or in bonds of the United States, and that he hold the bonds so purchased, and the accumulated interest thereon, as a sinking fund for the redemption and payment of the aforesaid bonds issued by the said town of Rosendale to aid in the construction of said railroad.

By chapter 880, Laws 1866, as amended by chapter 311, Laws 1868, certain towns, including the town of Rosendale, were authorized, upon complying with the provisions of said acts, to take stock and issue bonds therefor in aid of the construction of the Wallkill Valley Railway. The town of Rosendale did comply with such provisions, and such proceedings were had under said acts as resulted in a subscription in behalf of the town for the stock of the railway company, and the issue of the bonds of the town in the sum of $92,800, the bonds bearing date April 1, 1869. The railroad was built through the town and the proceeds of the bonds applied in aid of its construction.

Section 4 of chapter 907, Laws of 1869, as amended by chapter 283, Laws of 1871, provides that " all taxes, except school and road taxes, collected for the next thirty years, or so much thereof as may be necessary in any town, village or city, on the assessed valuation of any railroad in said town, village or city, for which said town, village or city has issued, or shall issue, bonds to aid in the construction of said railroad, shall be paid over to the treasurer of the county," the same to be applied by him in the manner prescribed in said section for the redemption of such bonds issued by the town. In case of the failure of the county treasurer to comply with the provisions of the act, any taxpayer of the town may apply, on petition, to the county judge, who may make an order directing compliance by the county treasurer.

Of the original bonds issued by the town of Rosendale at the time of the commencement of this proceeding, $8,000 of the principal sum remained outstanding; new bonds to the amount of $8,400 have

been issued to refund to that amount the original bonds as they fell due. The balance has been paid.

The county treasurer refused. to apply to the sinking fund the taxes above mentioned for the year 1887, and now appeals from the order of the county judge directing this application thereof.

*A. T. Clearwater*, for the appellant.

*Linson & Van Buren*, for the respondent.

Landon, J.:

Nearly every question presented in this class of cases has been decided adversely to the county treasurer. (*Clark* v. *Sheldon*, 106 N. Y., 104; *Strough* v. *Supervisors*, 28 N. Y. St. Rep., 967; *Bridges* v. *Supervisors*, 92 N. Y., 570; *Vinton* v. *Supervisors*, 18 N. Y. St. Rep., 435; *Hand* v. *Supervisors*, 31 Hun, 531.)

The following only are now urged:

1. Does section 4 of chapter 907, Laws of 1869, include the renewal bonds? So long as there are outstanding sufficient of the original bonds to absorb the taxes, the question is not material. But, if material, the renewal bonds renew the original debt in effect, though probably not in form. For thirty years the taxes upon the railroad are applicable to the payment of the debt. Such was the intention of the legislature. We should give it effect, and regard the substance rather than the letter, to the end that the intent of the legislature may not be defeated.

2. The Walkill Valley Rail*way* Company defaulted upon its mortgage, the mortgage was foreclosed, the railroad sold and became the property of the Walkill Valley Rail*road* Company. But the railroad remains, and the taxes applicable to the sinking fund are those collected upon "the assessed valuation of the railroad." Change of title or of name, or of both, does not change the property from which the taxes are derived.

3. Chapter 880, Laws of 1866, under which the original railroad company was organized, contains provisions looking towards the liquidation of the bonds issued by the several towns in aid of the construction of the railroad.

Thus the dividends upon the stock, and the stock itself, were devoted to this purpose, and taxation was authorized after ten years

to the amount of five per cent of the principal of the bonds, to the end that the bonds might be paid within thirty years from their date.

Section 7 of the act of 1866 was amended by chapter 762, Laws of 1870, so as to require a sinking fund to be provided by taxation every year within ten years from the date of the bonds, sufficient to provide for their payment at maturity. The act of 1866, thus amended in 1870, relates solely to the Wallkill Valley Railroad. It is urged that special provision being made by the act of 1866 for the bonds to be issued in aid of the construction of this railroad, the general provision made by the act of 1869 did not extend to these bonds; and that if the act of 1869 did apply before the act of 1870, amendatory of the seventh section of the act of 1866, the amendment was the latest special provision for the protection of the Wallkill Valley Railroad town bonds, and must be deemed to have superseded the provision made by the general act of 1869. But the general and special acts are consistent with each other, and the general act, by its general terms, includes the bonds in question. The object of all the acts was to provide security and means for the payment of the bonds. The creditor was by the special act of 1866 and the general act of 1869 given different securities. If the amendment of 1870 increased the security under the special act of 1866 it could not, certainly in the absence of express language to that effect, take away any security the creditor already held under the general act of 1869. The creditor was at liberty to accept every security tendered him, and the legislature could not without impairing the obligation of the contract deprive him of any security he already held, unless the pledge of the new security was given and accepted upon condition of a release of the old. These acts providing securities for payment are in the nature of contracts between debtor and creditor, and the legislature cannot, as in the case of ordinary legislation, supersede at will the earlier by the later act unless the later act provides a full equivalent. We discover no intention to supersede the security given by section 4 of the act of 1869, by the amendment in 1870 of the seventh section of the act of 1866.

Order affirmed, with costs.

LEARNED, P. J., and MAYHAM, J., concurred.

Order affirmed, with ten dollars and printing disbursements.